# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

|  |  |  |
|---|---|---|
| DANIELLE CRAIG, | ) | |
| Plaintiff, | ) | |
| v. | ) | 18 C 6702 |
| INTERNATIONAL ALLIANCE OF THEATRICAL STAGE EMPLOYEES; INTERNATIONAL ALLIANCE OF THEATRICAL STAGE EMPLOYEES, LOCAL 217; SMG, A DELAWARE CORPORATION, | ) | Judge Charles P. Kocoras |
| Defendants. | ) | |

# MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

Before the Court is Defendant International Alliance of Theatrical Stage Employees' ("International") motion to dismiss Danielle Craig's ("Craig") first amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court grants the motion.

The following facts are taken from Craig's first amended complaint and are assumed to be true for purposes of this motion. *Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995). The Court draws all reasonable inferences in Craig's favor. *Tamayo v. Blagojevich*. 526 F.3d 1074, 1081 (7th Cir. 2008).

Craig is a rigger at BMO Harris Bank Center. As a rigger, Craig loads, unloads, and installs temporary rigging equipment used in the production of live and filmed entertainment events. She is a member of both International and its local affiliate International Alliance of Theatrical Stage Employees, Local 217 ("Local 217").

International is an international union that represents behind-the-scene workers throughout the entertainment industry. It is a labor organization within the purview of Title VII, the Labor and Management Reporting and Disclosure Act ("LMRDA"), and the Labor-Management Relations Act ("LMRA").

Local 217 is a local union that represents International craft workers in and around Rockford, Illinois. It is a labor union within the purview of Title VII, the LMRDA, the LMRA, and the National Labor Relations Act ("NLRA").

SMG is a multinational company that manages entertainment venues, including BMO Harris Bank Center ("BMO") in Rockford, Illinois. SMG is an employer within the purview of Title VII, the LMRDA, LMRA, and the NLRA. SMG and Local 217 are governed by a collective bargaining agreement covering the production and technical services employees at BMO Harris Bank Center. Rick Abrams ("Abrams") is Local 217's business agent and refers employees to SMG via a referral hall.

At all relevant times, Craig was a lead rigger at BMO and a member and officer[1] of Local 217. Craig alleges that sexual harassment of women is "common at [BMO],"

---

[1] Craig was elected vice president at the end of 2015. Upon her election, Craig alleges that Abrams drastically reduced the amount of work offered to her through Local 217's referral hall.

and that she began to experience "more frequent and more intense harassment" after her promotion to lead rigger in July of 2017. Craig highlighted a particular incident which served as the basis of her complaint.

On or about July 11, 2017, Craig was working with fellow co-worker Scott Dixon ("Dixon") on a "catwalk-like structure" 75 feet in the air. While working, Craig claims that she pointed out an error Dixon made. In response, Dixon clenched his fist and threatened to strike her. He subsequently called her a "fucking bitch" and told her to "suck [his] dick." Craig alleges that SMG supervisors heard Dixon's remarks.

Craig immediately reported the incident to Local 217's steward, Michael Peterson ("Peterson"). Craig states that Peterson represented to her that because Dixon "had already apologized," no further action was needed. Craig then called Local 217's President, Chuck Whitmore ("Whitmore"). Again, no action was taken. Craig subsequently asked the Board of Local 217 to ensure that Dixon would no longer work on the same shift as her and requested that he issue her a written apology. The Board of Local 217 denied both requests.[2]

Craig alleges that following her complaints against Dixon, she "began to face persistent harassment from [Local 217] members." Specifically, Craig claims whenever she received praise or thanks for a job well done, "Abrams and the others would loudly or insinuate that [Craig] earned the praise by performing sexual favor[s]."

---

[2] According to Craig, Local 217 continued to refer her to work with Dixon, and Whitmore refused Craig's request for a written apology, allegedly indicating that it "would create a paper trail."

Craig also alleges that Abrams attempted to make her "appear incompetent" by accusing her of unsafely setting up equipment and blaming her for workplace drama. She also alleges discrimination based on her sex and differential treatment regarding her clothing. Abrams continued his retaliation against her by denying her work and preventing her from "receiving work from other [International] locals." Despite this harassment, Craig continued to attend union meetings and "speak out in favor of reforms."

On or about March 23, 2018, Craig attended a Local 217 general meeting and explained how she had been forced to seek other work because of Local 217's failure to adequately protect her. As she spoke, Craig alleges that Dixon pinned her to her chair and "violently kissed her in full view of the union membership and executive board." The Board of Local 217 did not remove Dixon from the meeting, and he subsequently left of his own volition.

Despite Craig's repeated requests, Local 217 refused to take any action against Dixon[3] and allegedly hindered her attempts to do so. Specifically, Craig alleges that Local 217 refused to tell her how to initiate union charges against him. She also claims that SMG similarly refused to help.

In late March 2018 through April 2018, Craig contacted International for its help with respect to the sexual harassment and discrimination. Craig communicated with

---

[3] Craig does allege that Local 217 suspended him for one day, despite representations that Dixon would be suspended for three days.

Patricia White ("White"), an International trustee. White allegedly told Craig to go to the police and put her in touch with a counselor. In mid-April, White told Craig that "because [Local 217] would not guarantee her safety, Craig should stop attending union meetings." White also told Craig that "if she was not safe working at [BMO], she should stop working there." Craig subsequently stopped working at BMO in the end of April and no longer attended meetings. As a result, Craig lost wages and opportunities for advancement and did not seek another term as vice president.

On April 30, 2018, White took some of Craig's written complaints about the sexual harassment and discrimination based on her sex and filed them as International charges against Local 217. Since notifying Local 217 of the charges, International has allegedly taken no steps to protect Craig, to investigate her allegations of discrimination based on sex, or to sanction Local 217 for its illegal conduct.

On October 3, 2018, Craig filed her initial complaint alleging that Local 217 and International violated the LMRDA and breached the duty of fair representation ("DFR"). International moved to dismiss the original complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. Craig subsequently filed an amended complaint. The amended complaint, inclusive of the prior DFR and LMRDA claims, added discrimination and retaliation claims under Title VII. International filed the instant motion to dismiss, seeking dismissal of the DFR, the LMRDA, and Title VII claims.

## LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) "tests the sufficiency of the complaint, not the merits of the case." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). The allegations in the complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Plaintiffs need not provide detailed factual allegations, but must provide enough factual support to raise their right to relief above a speculative level. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A claim must be facially plausible, meaning that the pleadings must "allow…the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The claim must be described "in sufficient detail to give the defendant 'fair notice of what the…claim is and the grounds upon which it rests.'" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a 12(b)(6) motion to dismiss. *Iqbal*, 556 U.S. at 678.

## DISCUSSION

In her responsive pleadings, Craig alleges that International ratified or affirmed Local 217's illegal acts. Therefore, according to Craig, International is liable for violations of the DFR, the LMRDA, and Title VII. We evaluate each argument in turn.

## I. DFR and LMRDA Claims

### A. DFR

Craig first alleges that International breached the DFR. To establish a breach of the DFR, Craig is required to allege that International is her bargaining representative, an allegation she does not make. *See Stewart v. Int'l All. of Theatrical Stage Employees Union AFL-CIO*, 2015 WL 7273107, at *1 (N.D. Ill. 2015) (dismissing Plaintiff's breach of the DFR claim because Plaintiff failed to allege International was his bargaining representative); *see also Grant v. Burlington Indus.*, 627 F. Supp. 311, 313 (N.D. Ill. 1985) (stating that an entity is not "subject to the duty of fair representation" if it is "neither the bargaining representative for an employee nor a party to the collective bargaining agreement under which the employee receives her or his rights"). Accordingly, the Court dismisses the breach of the DFR claim.

### B. LMRDA

Craig next contends that International is vicariously liable for Local 217's illegal conduct and in violation of the LMRDA because: (1) International had knowledge of Local's illegal conduct and failed to initiate an investigation; (2) prevented her from attending meetings by failing to take steps to ensure her physical safety; and (3) because it was too dangerous for her to attend union meetings, she effectively lost her right to campaign and run for office. We evaluate each argument in turn.

Craig first alleges that International ratified Local 217's illegal conduct because it had knowledge of such acts and failed to initiate an investigation. However, "[a]n

international union had no independent duty to intervene in the affairs of its local chapters, even where the international has knowledge of the local's unlawful acts." *Stewart v. Int'l All. of Theatrical Stage Employees Union AFL-CIO*, 2015 WL 7273107, at *1 (N.D. Ill. 2015) (citing *Phelan v. Local 305 of United Ass'n of Journeymen & Apprentices of Plumbing & Pipefitting Indus. of U.S. & Can.*, 973 F.2d 1050, 1061 (2d Cir. 1992)). Therefore, International's failure to investigate Craig's claims do not make it liable for Local 217's alleged wrongdoing. *See Stewart*, 2015 WL 7273107, at * 1 (finding an international union not vicariously liable for its failure to investigate an alleged claim).

To support its contention, Craig articulates the following rule statement:

> To be liable under a theory of ratification, an international union must have acted in bad faith, or had full knowledge that the local had acted illegally and done nothing. *See, e.g., Rodonich v. House Wreckers Union Local 95*, 817 F.2d 967, 973 (2nd Cir. 1987) (full knowledge of the local union's illegal acts); *IBEW v. NLRB*, 487 F.2d 1113, 1129 (D.C. 1972) (bad faith or fraud). *See Joseph Hartge v. IATSE et al.* 2002 U.S. Dist. LEXIS 322, 10 (N.D. IL., Jan. 11, 2002) (full knowledge and no action or processing of charge).

Craig has failed to sufficiently allege that International ratified Local 217's unlawful conduct. We find the cases cited by Craig distinguishable. *See Rodonich v. House Wreckers Union Local* 95, 817 F.2d 967, 973 (2nd Cir. 1987) (the international union ratified the local's unlawful conduct only if it "affirmed the discipline imposed on plaintiffs with full knowledge that it was part of an overall scheme to suppress dissent in violation of the LMRDA.").; *see also IBEW v. NLRB*, 487 F.2d 1113, 1129

(D.C. 1972) (explaining that "[w]here the only action taken by a national or international union is in the nature of an appellate review of the action of a local union, and the national or international union must exercise its appellate function in good faith and in the absence of fraud … [the] international union should not be held answerable to damages to a member who was wrongfully disciplined by the local union")); *see also Hartge v. International Alliance of Theatrical State Employees Union, AFL-CIO*, 2002 WL 1204784, at *3 (N.D. Ill. 2002) (finding that the international union ratified the local union's illegal action when, having knowledge of the local's bad acts, it exercised its appellate powers by approving the Plaintiff's suspension and "ceasi[ing] all proceedings" on his appeal).

Indeed, Craig has not alleged that International terminated proceedings seeking to vindicate Craig's rights, nor has it attempted to frustrate her attempts to obtain redress. Therefore, we find International did not ratify Local 217's alleged bad acts by its failure to investigate.

Craig next alleges that International is vicariously liable for Local 217's violation of the LMRDA. Section 101(a)(1) of the LMRDA provides, in relevant part, that "[e]very member of a labor organization shall have equal rights and privileges within such organization . . . to attend membership meetings." 29 U.S.C. § 411(a)(1). "The United States Supreme Court has determined that the provisions of § 101(a)(1) are narrow in scope." *Conery v. Niccollai*, 34 Fex. Appx. 839, 842 (3d Cir. 2002) (citing *Calhoon v. Harvey*, 379 U.S. 134, 138-39 (1964)). *Calhoon* explained that § 411(a)(1)

is "no more than a command that members and classes of members shall not be discriminated against in their right to nominate and vote." 379 U.S. at 139. (finding that a district court lacked jurisdiction to hear § 411(a)(1) claim because "the complaining union members … have not been discriminated against in any way and have been denied no privilege or right to vote or nominate which the union has granted to others"). Therefore, to state a claim, Craig must allege "a denial of rights that are accorded to other members." *Kovach v. Turner Dairy Farms, Inc.*, 929 F. Supp. 2d 477, 493 (W.D. Pa. 2013) (citing *Calhoon*, 379 U.S. at 138-39).

While Craig has alleged serious discriminatory allegations, she fails to allege that she was discriminated in her right to nominate or vote for candidates or issues. In fact, Craig has failed to invoke the term "vote" in her first amended complaint. Also, we find her alleged inability to run for office without merit. Accordingly, read in a light most favorable to Craig, International is not liable for LMRDA violations.[4]

## II. Title VII

### A. Hostile Work Environment

In her response to International's motion to dismiss, Craig raises for the first time a Title VII claim for hostile work environment against International. To file a lawsuit under Title VII, a plaintiff must first file a charge with the EEOC describing the alleged employment discrimination. 42 U.S.C. § 2000e-5. A plaintiff may not bring Title VII

---

[4] Craig also mischaracterizes her first amended complaint. Craig alleges that International "actually instruct[ed] her to stop attending the meetings." However, International correctly asserts that the first amended complaint alleges that "if she was not safe working at [BMO], she should stop working there."

claims that were excluded from the EEOC charge. *Sitar v. Indiana Dept. of Trans.*, 344 F.3d 720, 726 (7th Cir. 2003). An exception to this rule arises for claims that are "reasonably related" to those included in the EEOC charge, meaning that the claims can be "expected to grow out of an EEOC investigation of the charges." *Id.* To be reasonably related, there must be a factual relationship between the claims and, "at a minimum, describe the same conduct and implicate the same individuals." *Cheek v. W. and S. Life Ins. Co.*, 31 F.3d 497, 501 (7th Cir. 1994). Thus, "[a]n aggrieved employee may not complain to the EEOC of only certain instances of discrimination, and then seek judicial relief for different instances of discrimination." *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992); *See Cheek*, 31 F.3d at 503 (finding Plaintiff waived hostile work environment claim asserted in brief where EEOC charge and complaint only alleged sex discrimination).

This principle governs in Craig's case, where her EEOC charge was limited to sex discrimination and retaliation on the basis of her sex. Craig's charge does not mention hostile work environment claims. Therefore, those claims fail because they have not been administratively exhausted.

### B. Sex Discrimination

Title VII prohibits employers from discriminating on the basis of sex. 42 U.S.C. § 2000e-2(a). "To state a claim for discrimination on the basis of sex, Plaintiff must show (1) she is a member of a protected class, (2) she was subjected to an adverse employment action, and (3) there is a connection between members in a protected class

and the adverse employment action." *Martino v. Western & Southern Financial Group*, 715 F.3d 195, 201-02 (7th Cir. 2013). "When sexual harassment in the workplace alters the terms and conditions of someone's employment, it falls within the scope of the prohibition against sex discrimination in Title VII. *Smith v. Sheahan*, 189 F.3d 529, 532 (7th Cir. 1999).

Craig alleges that International is liable for sex discrimination under Title VII because they made a "conscious decision" to do nothing "about a sexually hostile work environment." Specifically, Craig claims that "knowledge of sexual harassment and failure to take any action" constitutes an adverse employment action, making International liable. International argues that Craig's position is unsupported by statutory text. We agree.

"It is well established that a parent union may be held vicariously liable for the discriminatory acts of its affiliated local union where the facts indicate that the parent and the local have an agency relationship, or where the parent international ratifies or supports the local's discriminatory acts." *Rainey v. Town of Warren*, 80 F. Supp. 2d 5, 19 (D.R.I. 2000) (citing *Berger v. Iron Workers Reinforced Rodmen Local 201*, 843 F.2d 1395, 1429-30 (D.C. Cir. 1988)). Therefore, because Craig does not allege that an agency relationship existed, she must plausibly allege that International "knowingly authorized, instigated, supported, or encouraged the discriminatory acts committed by" Local 217. *Id.*

Craig does not properly allege that International ratified, supported, or encouraged Local 217's conduct. In her first amended complaint, Craig makes clear that White "told her to go to the police and put her in touch with a counselor." International also "took some of" Craig's complaint and "filed them as international charges against the Local 217 executive board." At no point has Craig alleged that she filed an initiative grievance that International failed to process. Consequently, it cannot be said that International knew of a grievance and sat in silence, thereby ratifying Local 217's action. Accordingly, Craig's claim is denied.

C. Retaliation

Craig next alleges that International is liable for retaliation under Title VII. "To plead a retaliation claim under Title VII, a plaintiff must allege [she] was engaged in a protected activity, [she] suffered an adverse employment action, and a causal link between the two." *Ross v. Univ. of Chi.*, 2018 WL 6448464, at *7 (N.D. Ill. 2018) (citing *Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 563 (7th Cir. 2016)). Title VII's "antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 67 (2006). An adverse employment action in the retaliation context is an employer's action that would "dissuade a reasonable worker from participating in protected activity." *Huri v. Office of the Chief Judge of the Circuit Court of Cook Cty.*, 804 F.3d 826, 833 (7th Cir. 2015); *see Henry v. Milwaukee County*, 530 F.3d 573, 586 (7th Cir. 2008) (stating that "[t]he range of conduct prohibited under the anti-retaliation

provision is broader than its anti-discrimination provision, … because the discriminatory acts proscribed by Title VII's anti-retaliation provision is broader than its anti-discrimination provision …").

Craig alleges that International is liable for retaliation because it: (1) "failed and refused to process the charging party's internal union charges, and have done so because of her sex and because she has complained of discrimination and harassment;" and (2) made the "conscious decision" to do nothing about Abrams' retaliation against her. We examine each argument in turn.

Craig has not alleged that she filed an initial grievance. While Craig does plead that International "failed and refused to process the charging party's internal union charges" on the basis of her sex, she also pleads that "White finally took some of Ms. Craig's written complaints about the sexual harassment and discrimination based on her sex and filed them as international charges against [Local 217]." At no point in her first amended complaint has Craig alleged that she filed an initial grievance or that International failed to process it. Therefore, we agree with International that Craig has failed to allege any material injury or harm as a result of International's failure to process internal charges. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) ("[A] complaint … must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery") (citing *Car Carriers, Inc. v. Ford Motor Co.*. 745 F.2d 1101, 1106 (7th Cir. 1984); *see also Aschroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that "plausibility" means a plaintiff must plead factual content

that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

Craig does not allege that Abrams had an involvement with International. Nor has Craig alleged that International had any control over Local 217's hiring hall. As mentioned, International is not alleged to be Craig's collective bargaining representative, and Craig fails to provide any support for her assertion that it ratified Abrams' conduct. Accordingly, Craig's retaliation claim is dismissed.


Dated: 7/11/2019

/s/ Charles P. Kocoras
Charles P. Kocoras
United States District Judge